**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 2:15-cr-00057-RFB |
| Plaintiff, | **ORDER** |
| v. | |
| CARLOS INCLAN, JR. | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is the government's Motion for Reconsideration [Dkt. 88, 94] of this Court's order regarding exclusion of evidence. Before the Court, additionally, is Defendant's Motion in Limine to Exclude Exhibits [Dkt. 90]. The Court had previously orally ruled on these motions and indicated that a further written ruling would follow. For the reasons stated below, the Motion in Limine [Dkt. 90] is GRANTED and the Motion for Reconsideration [Dkt. 88, 94] is DENIED.

## II. BACKGROUND

The Court makes the following findings of fact and holdings.

### A. Procedural Background

On February 25, 2015, Mr. Inclan was charged in an indictment with Receipt of Child Pornography under 18 U.S.C. 2252A(a)(2), Possession of Child Pornography under 18 U.S.C. 2252A(a)(5)(B), and Advertising Child Pornography under 18 U.S.C. 2251(d).

The indictment does not list the number of images of child pornography the government intends to use to prove its case, nor does it provide a description of the images related to any of the counts. After executing a search warrant at Mr. Inclan's residence on April 12, 2012, the Las Vegas Metropolitan Police Department ("LVMPD") seized eleven computers and 27 hard drives. The LVMPD also seized 184 CDs and DVDs. The LVMPD completed a forensic review of some of the seized devices, and reported that it had found child pornography on three computers, three hard drives, and thirteen discs. The government alleges these devices contain thousands of images and videos of child pornography.

### 1. Pretrial Exhibit Disclosure Order

In light of the number of images and videos located on numerous devices, Mr. Inclan filed a Motion for Bill of Particulars, arguing he could not adequately prepare a trial defense without knowing which images and videos from which devices the government intended to introduce. [Dkt. 26].

On February 23, 2017, the Court held a hearing regarding pre-trial case management, and addressed the Motion for Bill of Particulars. [Dkt 66, Transcript of Hearing]. At this hearing, the Court discussed with the government the nature of the case and the images involved. The Court found based upon the record that the Defendant would need to know which digital files the government intended to use at trial to be able to adequately prepare possible defenses. The government indicated that it did not intend to use all of the thousands of images but instead would only be using a select number of digital files. The Court denied the Motion for Bill of Particulars, because it was requested outside of the time limits prescribed by Fed. R. Crim. P. 7(f), but the Court nevertheless entered a Pretrial Case Management Order ("February 23 Order"), requiring disclosure of the exhibits the government intended to introduce at trial. [Dkt 66, p 5].

As is evident from the record, the Court entered its February 23 Order pursuant to its authority under Fed. R. Cr. P. 2 and 16, and its more general inherent authority to manage its docket. See U.S. v. W.R. Grace, 526 F.3d 499, 509 (9th Cir. 2008) (explaining that a Court may require a finalized list of witnesses and trial exhibits in advance of trial pursuant to its authority under Fed. R. Cr. P. 2 and 16, and

its managerial authority). The Court issued the Order in the interest of effective case management. The Court found that it would have been highly inefficient and unfair to require Inclan to have to prepare for the possibility of defending against the unique forensic characteristics of each of the thousands of images or files. Relatedly, the Court also issued the Order based upon its finding that there are thousands of digital images and that the Defendant would need to know which digital files the government might offer into evidence as the defenses could vary based upon each individual digital file. Given the Court's findings, the government's identification of the range of potential digital files to be used was necessary "to inform the defendant of the nature of the charges against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite for such purposes." United States v. Ayers, 924 F.2d 1468, 1438 (9th Cir. 1991) (internal quotations omitted).

The Court ordered the government to identify a set of 50 digital images from which it would offer evidence at trial. The Court accommodated the schedule of counsel for the government, and set a deadline for April 7, 2017 for the required disclosure to Inclan. [Dkt 66, pp 6-7]. The Court also informed the government that it was permitted to provide up to 50 images or files on the exhibit list, and would subsequently be permitted to seek leave of Court to substitute any of the images or files on that list with *forensically similar* images before the commencement of trial. [Dkt 66, pp 9, 11]. The government did not file any objections to the Court's *authority* to issue the February 23 Order.

On April 6, 2017, the government produced to the defense an April 3, 2017 Examiner Report, authored by Detective Ramirez, a government witness. The government represented to the defense that the list contained within the Examiner Report was the list of images it intended to use at trial. The report listed 53 images and videos.

## 2. Court's Enforcement of its Pretrial Order

Mr. Inclan filed a Motion in Limine on April 28, 2017, arguing, in part, that the government's list violated the Court's order in that it exceeded the limit of 50 images and/or videos. [Dkt. 80]. Importantly, in this motion, Inclan revealed a defense to Counts One and Three of the Indictment. Inclan argued that the Court, pursuant to Federal Rule of Evidence 403, should reduce or restrict even further the number of files or images, because the original list of 17 images and 36 videos could only serve as a basis for Count Two. Inclan revealed that the access dates and other access information associated with the images from the original list demonstrated that all of these images could only be relevant to a possible charge for possession of child pornography (Count Two) and <u>not</u> receipt (Count One) or advertising (Count Three). This argument about excessive evidence under Rule 403 by Inclan thus clearly revealed a potentially potent and dispositive defense to the government.

In response to the motion, the government then emailed defense counsel a new list of 50 images and videos on May 1, 2017, which included four files which were not contained in the government's initial list. The government also filed, on this same date, a response [Dkt. 82] to the motion and sought leave of the Court to add four additional images or files to its original list. The government acknowledged in its response that the four images were not previously provided and, more significantly, that the new images address the potential defense regarding Inclan's receipt and advertising offense conduct. The government noted, without explanation, that these four images had been omitted from the original list "in error."

The Court finds, factually and legally, that the government has violated the Court's February 23 Order in two ways. First, it did not comply with the Court's directive to submit to the defense a final list of 50 images and videos by April 7, 2017. Second, and more importantly, it supplemented its list with at least four images that were forensically dissimilar from the files or images on the original list. The government does not deny these violations. It only asserts an honest and good faith mistake for its actions.

4

The Court did not find (and does not find) that the government had good cause to violate the Court's February 23 Order. The Court finds that the government, as of the date of the February 23 Order, had possession of the drives and digital storages devices that contained the alleged contraband images that were the basis for the charges in this case. The Court finds that the government and its experts prior to April 7, 2017 had analyzed and reviewed the contents of the drives and digital storage devices that had been seized in this case. The government was made aware and understood on February 23, 2017 that the Court found as a matter of law that the defenses to the charges in the indictment could vary based upon the forensic characteristics of each digital file. The government understood as of February 23, 2017 that the Court was directing the government to provide a list of possible digital files to be presented at trial precisely because the Court had found that the Defendant would need to be able to prepare defenses unique to the digital files identified by the government pursuant to the Court's Order. The Court finds that the government understood, since the inception of the filing of the charges in this case, or at least as of February 23, 2017, that the forensic characteristics of the files would be a crucial aspect to proving the various charges filed against Inclan. Given the fact that there were multiple individuals who could have been associated with or used the media upon which the contraband files were found, the Court finds that the government understood, *before* submitting its original list, the significance for the charges of selecting files from media with respect to each of the different charges in the indictment. There were no extenuating circumstances for the government's failure to identify digital images necessary to its case by April 7, 2017. Thus, the Court finds that the government has not presented a reasonable basis for its error and lack of diligence in the original disclosure.

Mr. Inclan filed a Motion in Limine on May 3, 2017, to exclude all of the government's exhibits as a result of its violation of the Court's order, or, alternatively, to exclude the four images which were added subsequent to the April 7, 2017 deadline. [Dkt. 84]. At Mr. Inclan's May 9, 2017 calendar call, the Court denied in part and granted in part Mr. Inclan's Motion in Limine. It excluded the four forensically dissimilar

images which were added after April 7, 2017. The Court did not find a basis for modifying its February 23 Order to permit a late disclosure of new digital images. The Court thus enforced its February 23 Order and denied the government's request to be able to use the four new digital files or images.

After this calendar call, the government filed a Motion to Reconsider, as well as a Supplement to its Motion to Reconsider. [Dkt. 88, 94]. The government sought a reconsideration of the Court's order on the four images which were submitted after the April 7 deadline. In the alternative, the government submitted new digital files containing photographs and email fragments which it sought to substitute as exhibits. The government acknowledged that these new files had not been previously identified as required by the February 23 Order and the government acknowledged that this second set of substitute files were not forensically similar to files on the original list provided to the Defendant on April 6, 2017. The Court held a hearing prior to the commencement of trial on May 15, 2017, and denied the Motion to Reconsider. The government offered (and continues offer) no reason or extraordinary circumstances for its violations other than a simple mistake. The Court again enforced its February 23 Order, denying the government's request, and the Court made additional findings on the record. The Court indicated that it would also issue a written order elaborating its reasons for denying the government's motions. This order follows. The Court incorporates by reference its discussion and findings from the hearing into this written order.

### III. LEGAL STANDARD

The Federal Rules of Criminal Procedure make no specific provision for motions for reconsideration of an order enforcing a pretrial order, or of an order to exclude evidence. The government brings its Motion for Reconsideration on an equitable basis, and also cites to the principles of Fed. R. Civ. P. 60(b)(6). Under that rule, a court may relieve a party from a final judgment, order, or proceeding for any reason that justifies relief. Fed. R. Civ. P. 60(b)(6).

## IV. ANALYSIS

The government essentially argues that the Court should reconsider its enforcement order on the basis that it would be unfair to the government to exclude the four images from being presented to the jury, since this requires a substantial revision of the government's theory of its case. The government further argues that the Defendant has known about all of the seized images since the beginning of the case, and therefore is not unduly prejudiced by adding them now. It argues that the appropriate remedy would be to continue the case to allow Defendant to adequately prepare his defenses to the new images, rather than to exclude the images.

### A. Exclusion of the Four Images Disclosed After the April 7 Deadline

The Court has several bases for enforcing its pretrial order, which are rooted in the purposes of the February 23 Order itself. Allowing the government to subsequently add forensically dissimilar images to its exhibit list, in direct violation of the Court's pretrial order, would: a.) undermine the Court's inherent authority to orderly administer justice and its docket; b.) allow the government, through its own lack of diligence, to violate Mr. Inclan's due process rights; and c.) violate the Defendant's right to a fair trial by having his defense prematurely disclosed to the government.

#### 1. Inherent Authority and Authority Under the Rules

There exists a "well established" principle that "[d]istrict courts have inherent power to control their dockets." Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc., 146 F.3d 1071, 1074 (9th Cir. 1998) (internal quotation marks omitted). "All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders." Aloe Vera of Am., Inc. v. United States, 376 F.3d 960, 964-65 (9th Cir. 2004). The Court's February 23 Order requiring a disclosure of the evidence the government intends to use at trial, and its subsequent enforcement order, were both made pursuant to this inherent authority.

The government indicated that it had recovered thousands of images, and would not be using all of them at trial. Finding as a legal matter that the defenses in the case could depend upon the forensic characteristics of each digital file offered by the government, and recognizing the time-consuming and expensive expert forensic analysis related to each digital file, the Court determined that disclosure of a list of the digital files was necessary to advance the efficient administration of this case and the fairness of the proceeding. Fed. R. Cr. P. 16(a)(1)(E) requires that the government "permit the defendant to inspect and to copy or photograph…documents, data, photographs… if the item is within the government's possession, custody, or control, and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Cr. P. 16(d) governs the Court's powers to regulate discovery, and instructs that, "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Cr. P. 16(d)(1). It also provides that the court may enforce "this rule," including by any order "that is just under the circumstances." Fed. R. Cr. P. 16(d)(2). The Rules "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Cr. P. 2. Viewed together, the Ninth Circuit has interpreted the rules to mean that the Court may require the pretrial production of a list of trial evidence "as a matter of its discretion." W.R. Grace, 526 F.3d at 510-11. "Above all, nothing in Rule 16 expressly prohibits the district court from ordering additional pretrial discovery or disclosures that will further the objectives set forth in Rule 2… The Supreme Court has recognized that federal courts 'may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress'" Id. (quoting United States v. Hasting, 461 U.S. 499, 505 (1983)).

First, it must be noted that the government did not and has not challenged the Court's authority to issue its February 23 Order. Rather, the government challenges the Court's enforcement of this Order as an unnecessarily harsh remedy for its admitted violations of the Court's Order.

The Court rejected and continues to reject the government's argument. The Court entered its orders pursuant to its inherent authority to manage the case, and its authority under the Federal Rules. If the Court were to allow the government in this case or any other case to disregard the Court's orders based on an asserted "honest mistake" and nothing more, it would effectively undermine the inherent authority of the Court under Rule 16 and implicitly shift that authority to federal prosecutors. While the government might argue the infrequency of its potential mistakes, the Court was not presented with evidence of infrequency and it was not the basis for the government's motions. The Court finds that the government offered no evidence to establish that there was good cause for the mistake. Indeed, other than the government's assertion that it was a mistake, the Court has no basis for independently verifying that it was a mistake. Given the fact that the Court might find it to be a potential separation of powers violation to require the government to provide evidence of its trial preparation process, this Court (and other courts) will frequently be in a situation of having to accept the government's mere assertion of mistake. Allowing the government to violate a Court's pretrial order on an unverifiable mere assertion of mistake would effectively place the administration and timetable of a case in the hands of federal prosecutors. This would violate the essence of Rule 16 and the Court's authority.

Moreover, the Court finds the government's position unavailing, because the government's own lack of diligence caused its "mistake." The Court finds that the government in this case would certainly understand (and did understand) the immense significance to its case of identifying the digital files or images that best support the respective charges in the indictment. Having brought the charges in the first place, the government was also fully aware of the different requirements or elements for proving the three different charges in the indictment. In a child pornography case involving multiple devices with multiple people having different access to the respective devices, the government understood that the defenses to the various charges in this case would have included the following potential arguments: that Inclan did not have access to, or use, the particular device upon which contraband was found; or that the forensic

characteristics of the file do not show that Inclan received or advertised a particular image or file. Thus, the Court does not find it appropriate to reconsider its enforcement of the order where the government was, at best, not diligent in the submission of its original list.

Additionally, the government's suggestion that the appropriate remedy for its admitted violation of the Court's order would be to include the belatedly disclosed evidence and to continue the trial likewise undermines the Court's inherent authority and the purpose of Rule 16. Under the Rule, the Court is charged with managing the efficient administration of the case and not the government. The position taken by the government in this case with regard to a continuance would again subordinate the Court's administrative authority and its orders to the interests and authority of federal prosecutors. The Ninth Circuit's reasoning and explanation of the application of Rule 16 in <u>Grace</u> supports this Court's holding in this case as to its own authority under Rule 16. <u>W.R. Grace</u>, 526 F.3d at 510-11.

### 2. Defendant's Due Process

The Court also based its pretrial order, as well as its enforcement order, on underlying principles of due process and fairness. In this case, the Court found as a legal matter that the nature of the Defendant's defenses could vary based upon the forensic characteristics of each digital file. Indeed, the very reason the government has so assiduously sought to submit new files is its recognition that its case regarding the various substantive charges (and hence the defenses to those charges) would be significantly impacted if the new files were to be used. This is precisely the reason the Court entered its February 23 Order. In fact, at the hearing the Court warned the government about its choice of images when it imposed the Order. The Court found that Inclan is entitled to understand, with specificity, the case that is being presented against him, and the Court issued its order in part to ensure his rights to a fair trial and due process of law, under the Fifth and Fourteenth Amendments. These fairness principles also underlie the Rules of Criminal Procedure. "It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice. A federal court

has the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness." See United States v. Richter, 488 F.2d 170, 173-74 (9th Cir. 1973) (internal citations and quotation marks omitted). The Court determined that an April 7 disclosure would ensure fairness by giving Mr. Inclan sufficient time to prepare his defenses, and conduct forensic analysis of the evidence.

Most importantly, the Court also finds that it would be fundamentally unfair and highly prejudicial to Inclan to allow the government to substitute these forensically dissimilar images after having now been informed of a possible defense by Inclan to the charges. Contrary to the government's assertions, the Court finds it to be highly prejudicial to Inclan to allow the government to now offer different image or files. The Court set a disclosure schedule and it accompanied the schedule with a ruling that no further modifications to the government's evidence list with forensically dissimilar images or files would be permitted. The government understood the purpose and implications of the Court's order. The Defendant relied upon the Court's order and revealed to the government through an *in limine* motion the nature of one of its defenses. This defense related to the specific images or files identified in the government's original list. And based upon this revelation, the Court finds that the government sought to modify its original list with forensically dissimilar images to specifically address the defense revealed by Inclan in the *in limine* motion. The government did not seek to modify its digital file list until *after* Inclan revealed one of his defenses in the *in limine* motion. This is the very definition of unfair prejudice—the government learning of a defense that it would not have learned of but for its violation of the Court's order, and then seeking to modify its evidence in defiance of the order to address the specific defense revealed by Inclan. The failure to enforce the Court's order would be fundamentally unfair and highly prejudicial to Inclan and the Court declines to revise its ruling.

### B. Exclusion of the Additional Images and Email Fragments

The government has presented additional alternative digital files as part of its Motion for Reconsideration, seeking to admit these in lieu of the four images which the Court has excluded. The Court

will not permit inclusion of this evidence, for all of the same reasons enumerated as to the initial four images which were not timely disclosed. None of these digital files were properly disclosed by April 7, 2017, pursuant to the Court's February 23 Order. These digital files are offered at an even later date than the first four substitute files. Thus, the basis for rejecting them is even more compelling at this late stage.

Furthermore, the Court finds it appropriate to reject these new files as being irrelevant under Rule 401 and unfairly prejudicial and confusing to the jury under Rule 403. The government could not adequately proffer that these images would establish Inclan's possession or use of the drives or storage devices upon which they were found. The Court does not find that the files themselves provide sufficient information to be relevant to the charges in this case. Additionally, the digital files containing images of children with Inclan, and the email file fragments, would be unfairly prejudicial without offering much probative value. The government seeks to present the images as evidence of Mr. Inclan's personal use of the devices on which the pornographic images were located. The Court agrees with Defendant, that the probative value of this evidence is outweighed by its prejudicial effect, and for that additional reason, excludes this evidence pursuant to Fed. R. Evid. 403.

The Court does note that its evidentiary rulings are always subject to reconsideration depending upon the revelation of new facts and how the case unfolds at trial.

V. **Conclusion**

IT IS ORDERED that the United States' Motion for Reconsideration [Dkt 88] and its supplemental Motion for Reconsideration [Dkt 94] are DENIED.

IT IS FURTHER ORDERED that Defendant's Motion in Limine [Dkt 90] is GRANTED.

DATED this 4th day of August, 2017.

_____
RICHARD F. BOULWARE, II.
United States District Court Judge